IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:08-CV-208-D

| | |
|---|---|
| RONNIE WINSTEAD, ) <br> ) <br> Plaintiff/Claimant, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) | **MEMORANDUM & RECOMMENDATION** |

This matter is before the court on the parties' cross-motions for judgment on the pleadings. Claimant Ronnie Winstead seeks judicial review of the Commissioner's denial of his application for Supplemental Security Income and Disability Insurance Benefits. After a thorough review of the record and consideration of the briefs submitted by counsel, it is recommended that Claimant's Motion for Judgment on the Pleadings [DE-19] be denied and Defendant's Motion for Judgment on the Pleadings [DE-21] be granted.

## STATEMENT OF THE CASE

Claimant filed an application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on September 2, 2003. (R. 466-69; 574-77.) Based on previous applications for SSI and DIB, filed in 1995, Claimant received benefits for a closed period of disability from April 24, 1995 through September 30, 1996. Claimant's second set of applications for SSI and DIB, filed in 2000, were denied by the Commissioner in 2002. In the 2003 applications at issue here, Claimant alleges that he became disabled on April 24, 1995, due to back, shoulder and knee pain, and asthma. (See R. 475, 478-79.) The Commissioner denied his applications initially and on reconsideration. Thereafter, Claimant

timely requested a hearing and appeared before an Administrative Law Judge ("ALJ") on October 19, 2005.  In a decision dated April 14, 2006, the ALJ found that Claimant was not under a "disability" as defined in the Social Security Act and therefore not entitled to benefits.  (R. 52-59.)  On February 19, 2007, the Appeals Council denied Claimant's request for review of the matter, rendering the ALJ's decision a "final decision" for purposes of judicial review.  See Walls v. Barnhart, 296 F.3d 287, 289 (4th Cir. 2002) (noting that when the Appeals Council denies a request for review, the underlying decision by the ALJ becomes the agency's final decision for purposes of appeal).  Claimant timely commenced the instant action pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW AND SOCIAL SECURITY FRAMEWORK

The scope of judicial review of a final decision regarding disability benefits under the Social Security Act, 42 U.S.C. § 405(g), is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through application of the correct legal standards.  See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

This Court must not weigh the evidence, as it lacks the authority to substitute its judgment for that of the Commissioner.  See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Thus, in determining whether substantial evidence supports the Commissioner's decision, the Court's review is limited to whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his or her findings and

rationale in crediting the evidence. See Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-40 (4th Cir. 1997).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed in a disability case. See 20 C.F.R. §§ 404.1520 and 416.920. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. If the claimant is not engaged in substantial gainful activity, then at step two the ALJ determines whether the claimant has a severe impairment or combination of impairments which significantly limit him or her from performing basic work activities. If no severe impairment is found, the claim is denied. If the claimant has a severe impairment, at step three the ALJ determines whether the claimant's impairment meets or equals the requirements of one of the Listings of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. If the impairment meets or equals a Listing, the person is disabled per se.

If the impairment does not meet or equal a Listing, at step four the claimant's residual functional capacity ("RFC") is assessed to determine if the claimant can perform his or her past work despite the impairment; if so, the claim is denied. However, if the claimant cannot perform his or her past relevant work, at step five the burden shifts to the Commissioner to show that the claimant, based on his or her age, education, work experience and RFC, can perform other substantial gainful work. The Commissioner often attempts to carry its burden through the testimony of a vocational expert ("VE"), who testifies as to jobs available in the economy based on the characteristics of the claimant.

In this case, Claimant alleges that the ALJ erred in his decision by not giving controlling weight to the assessment offered by Dr. Rudolph Maier, one of Claimant's treating physicians.

3

## **FACTUAL HISTORY**

**I.     The ALJ's Findings**

In making the decision in this case, the ALJ proceeded through the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920.  The ALJ first found that Claimant had not engaged in substantial gainful activity at any time relevant to the decision.  (R. 54.)  At step two, the ALJ determined that Claimant suffered from two "severe" impairments--disc disease of the lumbosacral spine and a history of a torn meniscus of the left knee--which imposed more than a minimal limitation on Claimant's ability to perform basic work activities.  (Id.)  See 20 C.F.R. § 404.1520(c).  At step three, the ALJ determined that Claimant's impairments did not, alone or in combination, meet or medically equal one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (R. 55.)

The ALJ next determined Claimant's RFC by considering all of his subjective complaints and reviewing the medical evidence.  Of particular note in assessing the argument presented in Claimant's brief, the ALJ discussed at length the opinion of Claimant's treating physician, Dr. Maier, a Board-certified psychiatrist and neurologist. (R. 56-58.)  Claimant was referred to Dr. Maier in August 2005 after persistent complaints of pain despite various treatments.  (R. 56.)  On August 18, 2005, Dr. Maier noted clinical evidence of facet arthropathy in Claimant's lower back and of sacroiliac joint dysfunction on the right.  (R. 56, 566-68.)  However, Dr. Maier described Claimant as well-muscled with no evidence of atrophy or weakness and commented on Claimant's normal reflexes in his lower extremities, normal sensation, and normal range of motion in his neck and shoulders. (R. 56, 567-68.)  On October 11, 2005, Dr. Maier opined that Claimant was unemployable

and unable to do heavy work due to his back pain. (R. 56, 562.) On December 13, 2005, Dr. Maier completed a Medical Source Statement indicating that Claimant was capable of occasionally lifting or carrying up to 25 pounds; frequently lifting or carrying less than 10 pounds; standing or walking for less than 2 hours in an 8-hour workday; and sitting for less than 6 hours in an 8-hour workday. (R. 56, 569-70.) Dr. Maier also noted that Claimant's ability to push and/or pull was limited in his lower extremities and that Claimant had some postural limitations. (R. 570.) Dr. Maier noted no significant manipulative, visual/communicative, or environmental limitations. (R. 571-72.)

The ALJ described a perceived disconnect between Dr. Maier's October 2005 opinion and his December 2005 Medical Source Statement, as well as a lack of support for the October 2005 opinion in Dr. Maier's treatment records, which "show[ed] no evidence of atrophy, weakness, or loss of sensation in the extremities." (R. 57.) As a result, the ALJ explained that although he gave Dr. Maier's opinions "considerable weight," he did not give them "controlling weight." (R. 58.) The ALJ did not give great weight to the opinions of the non-examining State agency medical consultants of record. (R. 58.) After considering all of the evidence, the ALJ concluded that Claimant had the RFC to perform a full range of light work. (R. 55-58.)

At step four, the ALJ found that Claimant was capable of performing his past relevant work as a short-order cook. (R. 58.) See 20 C.F.R. §§ 404.1565 and 416.965. As a result, the ALJ found that Claimant was not under a "disability," as defined in the Social Security Act, at any time relevant to the decision. (Id.)

5

## II. Claimant's Testimony at the Administrative Hearing

Claimant testified at his administrative hearing. (R. 632-73.)[1] Claimant was 49 years old and had completed high school. (Id.) He was divorced and homeless, living out of his automobile. (R. 634-35.) Claimant removed the back seat from his car, cut the front seat in half, and arranged quilts and mattresses to make a bed. (R. 651.) Claimant had no license and didn't drive. (R. 635.) He hitchhiked to Wilson and then took a bus to Raleigh for his hearing. (R. 671-72.)

Claimant had no income on the date of the hearing. Claimant's most recent employment was in 1995, prior to his alleged onset date, when he worked as a stock material handler. (R. 637.) He previously worked as a salesman and a cook. (Id.)

Claimant testified that his main medical issue was his lower back, which began troubling him after an automobile accident in 1995. (R. 638, 642.) He testified that he experienced severe pain in his lower back due to inflamed joints and pinched nerves. (R. 638.) Claimant's lower back pain was unresponsive to physical therapy and epidural injections, and his doctors didn't believe surgery would help his condition. (R. 639-41.) Chiropractic treatment helped a little, but Claimant had to discontinue the treatment due to a lack of funds. (R. 641.)

Claimant began seeing Dr. Maier approximately three months before his hearing. (R. 643.) When Claimant started seeing Dr. Maier, he was not on medication, though he had previously been on and off medications. (R. 644-45.) Dr. Maier put Claimant on Oxycodone, but at the hearing Claimant testified he did not feel it was helping. (R. 645,

---

[1] Although Claimant is currently represented by counsel, he was not represented at his administrative hearing.

656.) Claimant explained that Dr. Maier did not order new MRIs and X-rays but instead sent for reports on tests that were done several years before he began treating Claimant. (R. 645-46.) Claimant testified about left shoulder pain, migraine headaches, neck pain, a tear in his left knee, and occasional asthma. (R. 646-50.) Claimant testified that his pain was constant, bothering him every day. (R. 654.) Claimant described his back pain as between moderate and severe even when he wasn't exerting himself. (R. 655.)

Claimant testified about his activities of daily living. (R. 650-60.) According to Claimant, "all [he does] is hurt and go to the doctor when he can . . . , and eat." (R. 659.) Claimant testified that his days are spent putting bags of ice on his back, getting water to bathe himself, and walking. (R. 652-53.) Claimant bathes outside and washes his clothes in a five-gallon bucket, even in the wintertime. (R. 658.) He usually gets a ride to the nearest town to buy food. (R. 653.) He sometimes cooks on a small propane gas cooker. (R. 652.) Depending on the day, Claimant can walk between 5 and 25 minutes or stand between 15 and 20 minutes before he has to sit down. (R. 653-54, 663.) Claimant has no social outlets or hobbies. (R. 656, 658.) He does not have regular contact with his brothers and sisters, who all live out of town. (R. 657.) Prior to the date of the hearing, he hadn't seen or heard from his adult daughter in over five years. (R. 656.) Claimant testified that his mother had passed away but that his father was alive and sometimes gave him rides to the doctor. (Id.)

### III. Claimant's Argument

Claimant argues that the ALJ erred by not giving controlling weight to Dr. Maier's opinion and in finding that Claimant could do the full range of light work. Defendant responds that the ALJ correctly found that (1) Dr. Maier's October statement that Claimant

7

was "unemployable" was negated by his December opinion, which allowed for a range of light to sedentary work, and that (2) Dr. Maier's restrictions for sitting, standing, and walking were unsupported by the doctor's own treatment records and other evidence of record. In analyzing this argument, the court has reviewed Dr. Maier's reports and the ALJ's related findings in detail.

Dr. Maier first met with Claimant on August 18, 2005, two months prior to Claimant's hearing. (R. 566-68.) Dr. Maier reported that Claimant had previously tried pain medications Vioxx, Naprosyn, and Percocet. He recounted Claimant's descriptions of his experiences with low back pain, shoulder pain, knee pain, and headaches. (R. 566-67.) In this context, Dr. Maier catalogued Claimant's self-described limitations as 10-15 minutes of sitting, 30-45 minutes of standing, or 15-20 minutes of walking before needing to stop due to pain. (R. 566.) After examining Claimant, Dr. Maier offered his impression that Claimant "has clinical evidence of facet arthropathy of the low back and also of sacroiliac joint dysfunction on the right"; that Claimant's back was stiff and that he might have a natural fusion; that Claimant's headache was myofascial in origin; and that he had found nothing in the right knee. (R. 568.) Dr. Maier decided to begin his treatment of Claimant by helping him get more and better sleep. He declined to start Claimant on opioids until his sleep improved. (Id.)

On October 11, 2005, Dr. Maier wrote a note certifying that Claimant "has significant back pain which prevents him from doing heavy work. He has not received maximum medical improvement. It is possible that he may be able to attain a sedentary or light duty work status in time, but would likely require retraining. Presently he is unemployable." (R.

562.) (emphasis added). Also on this date, Dr. Maier prescribed Claimant Oxycodone for pain and Topamax for migraines. (R. 563-64.)

On December 13, 2005, Dr. Maier completed a Medical Source Statement indicating that Claimant could lift and/or carry 25 pounds occasionally and less than ten pounds frequently; stand and/or walk for less than two hours in an eight-hour workday; and sit less than six hours in an eight-hour workday. (R. 569-70.) Dr. Maier noted some limitations in Claimant's pushing and pulling abilities in his lower extremities. (R. 570.) He suggested that Claimant could frequently balance and occasionally climb, kneel, crouch, crawl and stoop, and that Claimant had no manipulative, visual/communicative, or environmental limitations. (R. 570-72.)

With regards to Dr. Maier's reports and opinion, the ALJ wrote,

> Dr. Maier's opinion that the claimant was unemployable in October 2005 is negated by his completed physical assessment dated December 2005 which indicates that the claimant can perform a range of light to sedentary work. As for Dr. Maier's contention that the claimant is unable to do the sitting, standing, or walking required for light to sedentary work, his own records do not support such a conclusion. Dr. Maier's treatment records show no evidence of atrophy, weakness, or loss of sensation in the extremities. In fact, Dr. Maier indicated that the claimant was well muscled . . . .

(R. 57.) The ALJ cited other record evidence tending to undercut Dr. Maier's opinion, and concluded, "[W]hile Dr. Maier's <u>opinions</u> have been given considerable weight, controlling weight has not been accorded his <u>conclusions</u>." (R. 58) (emphasis added).

A statement by a treating physician that a claimant is "disabled" or "unable to work" will not necessarily lead to a finding that the claimant is disabled. 20 C.F.R. § 404.1527(e)(1). Opinions such as these "are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings

9

that are dispositive of the case." Id. § 404.1527(e).  As the regulations make plain, Dr. Maier's October 11, 2005 note stating that "[p]resently [Claimant] is unemployable" is not a medical opinion and need not have been given any special consideration or weight by the ALJ.

Under the Commissioner's regulations, controlling weight is given to the opinion of a treating source on the issues of the nature and severity of an impairment if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).  Here, the ALJ found Dr. Maier's opinion on Claimant's sitting, standing, and walking abilities unsupported by Dr. Maier's own treatment records and inconsistent with other evidence and Claimant's own testimony.  (R. 57-58.)[2] The ALJ did, however, credit Dr. Maier's conclusion on occasional lifting and carrying over that of the non-examining State agency medical consultants.  (R. 58.)

---

[2]The ALJ correctly stated that Dr. Maier's December 2005 Medical Source Statement indicated that Claimant met some requirements of sedentary to light work. (R. 56 (finding that Dr. Maier's opinion indicated that Claimant "can perform a range of light to sedentary work.").)  The ALJ also correctly summarized Dr. Maier's opinion: "Dr. Maier reported that the claimant could lift up to 25 pounds occasionally and less than 10 pounds frequently; could walk or stand less than two hours out of an 8-hour workday; sit less than 6 hours out of an 8-hour workday; and was limited in his ability to use the lower extremities to push/pull." (R. 56.)  However, after specifically finding that Dr. Maier's opinion on Claimant's sitting, standing, and walking abilities was not supported by his own records and was inconsistent with other record evidence, the ALJ rejected this portion of Dr. Maier's opinion and instead concluded, based on persuasive contradictory evidence, that Claimant was capable of performing a full range of light work. (R. 57-58.)

After a full and careful review, the court finds that the ALJ did not err in his review of Dr. Maier's reports and opinion. Dr. Maier's medical opinions were properly credited in part and accorded partially favorable treatment when weighed alongside the opinions of the State examiners. However, the ALJ properly rejected those aspects of Dr. Maier's opinions that he found to be unsupported by clinical evidence or inconsistent with other substantial evidence of record. The ALJ's ultimate conclusion that Claimant could perform the full range of light work, though out of step with Dr. Maier's medical source statement, was supported by substantial evidence.

## **CONCLUSION**

Accordingly, because there is substantial evidence to support the findings of the ALJ, the court **RECOMMENDS** that Claimant's motion for judgment on the pleadings be **DENIED** and that Defendant's motion for judgment on the pleadings be **GRANTED**. The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This the 29th day of June, 2009.

DAVID W. DANIEL
United States Magistrate Judge